IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No. 5:19-CR-00025-RWS-CMC |
| VINCENT MARCHETTI, JR. (03). | § § | |

**ORDER**

Before the Court are Defendant Vincent Marchetti, Jr.'s Motion for Judgment of Acquittal (Docket No. 612) and Motion for Leave to File Supplement to Defendant Vincent Marchetti, Jr.'s Motion for Judgment of Acquittal (Docket No. 659). The United States responded to the motion for acquittal. Docket No. 620. For the reasons set forth below, Defendant's Motion for Leave to File Supplement (Docket No. 659) is **GRANTED** and Motion for Judgment of Acquittal (Docket No. 612) is **DENIED**.

**BACKGROUND**

On April 21, 2021, a federal grand jury in the Eastern District of Texas returned a superseding indictment against Defendant Vincent Marchetti, Jr. Docket No. 239. The indictment charged him with conspiracy to commit Illegal Remunerations, that is to conspire to violate the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, in violation of 18 U.S.C. § 371 (Count 1). *Id.* The Court held a trial on this matter from November 15 to December 17, 2021. The jury deliberated and returned a verdict of guilty on Count 1. Docket No. 597. Defendant now challenges his conviction.

**LEGAL STANDARD**

The Federal Rules of Criminal Procedure provide that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the

court discharges the jury, whichever is later." FED. R. CRIM. P. 29(c). In considering a motion for a judgment of acquittal, the court determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Coleman v. Johnson*, 566 U.S. 650 (2012); *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012); *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir.), *cert. denied*, 133 S. Ct. 673 (2012). A motion for judgment of acquittal challenges the sufficiency of the evidence. *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007). The Fifth Circuit recently characterized the standard of review in such instances:

> When a sufficiency issue is preserved in a jury trial through a proper Rule 29 motion, the claim is reviewed *de novo*, "but with substantial deference to the jury verdict." *United States v. Suarez*, 879 F.3d 626, 630 (5th Cir. 2018) (footnote and quotations omitted). For that review, all credibility determinations and reasonable inferences are resolved in favor of the verdict, *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995); and, in that regard, we do not assess the credibility of the witnesses, as that "is the exclusive province of the jury", *United States v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992) (citation omitted). The evidence is sufficient "if a reasonable trier of fact could conclude . . . the elements of the offense were established beyond a reasonable doubt." *Suarez*, 879 F.3d at 630 (alteration in original) (footnote omitted).

*United States v. Pendleton*, 761 F. App'x 339, 344 (5th Cir. 2019).

"In evaluating the sufficiency of the evidence, it is well established that the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Meza*, 701 F.3d 411, 422–23 (5th Cir. 2012) (citing *United States v. Infante*, 404 F.3d 376, 384–85 (5th Cir. 2005) (internal quotation marks omitted)).

"The trial court may not substitute its own subjective interpretation of the evidence for that of the jury's." *United States v. Varkonyi*, 611 F.2d 84, 85 (5th Cir.), *cert. denied*, 446 U.S. 945

(1980) (citing *United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979)). Indeed, the court must "consider the evidence in the light most favorable to the government, drawing 'all reasonable inferences and credibility choices in support of the verdict.' " *United States v. Demmitt*, 706 F.3d 665, 677 (5th Cir. 2013); *accord United States v. Anderson*, 559 F.3d 348, 535 (5th Cir.), *cert. denied*, 557 U.S. 913 (2009). "A court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc) (quoting *Jackson*, 443 U.S. at 319). Therefore, "the only question . . . is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656.

## ANALYSIS

I.  **Defendant's Motion for Leave to File Supplement to Defendant Vincent Marchetti, Jr.'s Motion for Judgment of Acquittal**

Defendant moves for leave to file a supplement in support of his Motion for Judgment of Acquittal (Docket No. 612), bringing to the Court's attention a recently published Fifth Circuit opinion regarding the *mens rea* element of willfulness for violating the Anti-Kickback Statute. Docket No. 659 at 1 (citing *United States v. Nora*, 988 F.3d 823, 834 (5th Cir. 2021)). The Government opposes. *Id.* at 3. Defendant requests to supplement his motion to assist the Court in analyzing whether there was sufficient evidence that Defendant "knew receiving percentage based compensation for marketing and advertising services constituted illegal kickbacks." *Id.* at 2. Defendant contends that the Government would not be prejudiced because it may respond to the supplement. *Id.*

Having reviewed the proposed supplement and finding no prejudice against the Government, the Court **GRANTS** Defendant's Motion for Leave to File a Supplement (Docket No. 659). Accordingly, the Court will consider Defendant's supplemental briefing in its analysis of Defendant's Motion for Judgment of Acquittal.

## II.  Defendant's Motion for Judgment of Acquittal

With respect to Count 1, the Government was required to establish beyond a reasonable doubt that: (1) Defendant and at least one other person agreed to commit the crime of illegal remunerations, as charged in the First Superseding Indictment; (2) Defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and (3) at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy. Docket No. 620 at 4.

"The overt act need not be of a criminal nature so long as it is done in furtherance of the conspiracy." *See* Pattern Jury Instructions, Criminal Cases, U.S. Fifth Circuit, District Judge Ass'n, No. 2.15A (2019) ("Fifth Circuit Pattern Jury Instructions"). A person may be a conspirator without knowing every detail of the conspiracy or knowing the identities of every other conspirator. *Id.* Proof of a formal agreement among alleged conspirators, proof of all the details of the alleged scheme or proof of actual success of the unlawful objections is not required. *Id.*

Proving conspiracy also requires analyzing the intent to commit the underlying substantive offense. *See United States v. Brooks*, 681 F.3d 678, 699 (5th Cir. 2012). In this case, the elements of illegal remunerations under 42 U.S.C. §§ 1320a-7b(b)(1)(A) and 1320a-7b(b)(1)(B) are: (1) that Defendant solicited or received remuneration, including any kickback, bribe or rebate; (2) that the remuneration was solicited or received in return for referring an individual to the provider (Vantari)

for the furnishing or arranging the furnishing of any item or service, or for arranging for or recommending the order of an item or service; (3) that the item or service was one for which payment was or might be made, in whole or in part, under a Federal health care program; and (4) that Defendant acted knowingly and willfully when soliciting or receiving remuneration. *See* Docket No. 620 at 5 (citing Fifth Circuit Pattern Jury Instructions, No. 2.109A).

In this case, the elements of illegal remunerations under 42 U.S.C. §§ 1320a-7b(b)(2)(A) and 1320a-7b(b)(2)(B) are: (1) that Defendant paid or offered to pay any remuneration, including any kickback, bribe, or rebate; (2) that Defendant did so to induce another person to refer an individual to Vantari for the furnishing or arranging for the furnishing of any item or service, or to arrange for or recommend the ordering of items or services; (3) that the item or service was one for which payment was or might be made, in whole or in part, under a Federal health care program; and (4) that Defendant acted knowingly and willfully when paying or offering to pay the remuneration. *See id.* at 6 (citing Fifth Circuit Pattern Jury Instructions, No. 2.109B).

Remuneration may be solicited directly or indirectly, overtly or covertly—that is, secretly. Fifth Circuit Pattern Jury Instructions, No. 2.109B. Remuneration may be in cash or in kind. *Id.* To meet its burden, the Government was not required to prove that Defendant's only purpose—or even his primary purpose—was to solicit remuneration in return for a referral. *Id.* The Government must only to show that the solicitation was made, or remuneration was received, in part for that purpose. *Id.*

In his motion for judgment of acquittal, Defendant asserts that "the Government has failed to prove the essential elements to establish that Mr. Marchetti conspired to violate the AKS and failed to establish that Mr. Marchetti entered into an agreement to commit a crime." Docket No. 612 at 19. The Court considers each argument in turn.

### A. Sufficiency of the Evidence to Prove the Elements of Defendant Knowingly and Willfully Violating the Anti-Kickback Statute

Defendant first contends that the Government failed to prove he was aware of the alleged conduct of his alleged co-conspirators. *Id.* Defendant distinguishes this type of case from other conspiracies where the underlying business is illegal; rather, an Anti-Kickback Statute conspiracy's underlying activity is legal. *Id.* Defendant argues that the Government failed to present evidence that the alleged actions of other alleged co-conspirators were dependent on, benefited from or were furthered by the others' alleged schemes. *Id.* at 19–20. Defendant attacks the sufficiency of the Government's evidence, arguing that it presented: (1) no evidence showing Defendant spoke or met with James J. Walker, Jr., Timothy Armstrong, Virginia Blake Herrin, Patrick Ridgeway, Chrismere Mallard, Ray W. Ng and Ashley Kretzschmar; (2) no evidence that Defendant or his associates provided anything of value to induce physicians to refer or submit orders for genetic testing to be performed by Vantari; (3) no evidence that Defendant or his associates provided anything of value to anyone for the furnishing, or arranging for the furnishing, of health care services; (4) no evidence that Defendant participated in the DART Registry, a clinical trial designed to assess whether pharmacogenetic data could impact a patient's drug regimen; (5) no evidence that Nicholas Arroyo or other Vantari employee or contractor informed Defendant that Vantari was behind the "research grant" to drive sales or that other defendants' use of the "research grant" drove test referrals; and (6) no evidence that physicians associated with ALS billed using the "G code" that allegedly was used by some other co-defendants to induce physicians to induce them to refer business to Vantari. *Id.* at 20; see also Docket No. 239 ¶ 18.

Moreover, Defendant contends that the Government failed to prove Defendant "***knew*** that receiving percentage-based compensation for marketing and advertising services constituted illegal remunerations." Docket No. 659-1 at 2 (emphasis in original) (citing *United States v. Nora*,

988 F.3d 823, 830, 834 (5th Cir. 2021)).  Defendant again contends that the record lacks the evidence or testimony to prove Defendant "purposefully received percentage-based compensation for marketing and advertising services knowing that such payments were illegal remunerations." *Id.* (citing *Nora*, 988 F.3d at 834).

Contrary to Defendant's arguments, the Government provided sufficient evidence that Defendant knowingly and willfully violated the Anti-Kickback Statute.  The Government presented evidence that Defendant was aware of the conduct of his alleged co-conspirators: contracts signed by Defendant (GX10–15); email communications authored or received by Defendant describing payments for Medicare business (GX400–408, 411–12B); and a communication in which Defendant shared his belief with Arroyo that he was receiving a bonus from Vantari for Medicare business (GX403).  Docket No. 620 at 9.

The Government also presented evidence that Defendant knew that payment of a percentage of sales commissions to contract sales personnel violated the Anti-Kickback Statute. *Id.*; GX219A–B.  Arroyo and Lamb testified they each told Defendant that paying him a percentage of sales commissions for Medicare business would violate the Anti-Kickback Statute. *Id.*  Lamb testified that when he met with Defendant, Lamb made clear that Vantari's regulatory counsel advised Vantari to change the compensation model to comply with the law. *Id.*  The Government presented contemporaneous emails to corroborate Lamb's testimony. *Id.*; GX215, 255, 260.

The Government introduced evidence that Defendant proposed a contractual arrangement to Arroyo by which Defendant would be secretly paid for the furnishing or arranging for the furnishing of, or for arranging for or recommending the ordering of, Medicare business.  Docket No. 620 at 10; GX201A–B.  In these communications (GX201A–B), Defendant presented to Arroyo an activity-based compensation contract.  The Government also presented evidence that

Defendant was well aware of and cooperative in Vantari's "superficial" transition to an activity-based compensation model. Docket No. 620 at 10. Specifically, the Government presented an email with the misrepresentation that Vantari would no longer pay a percent commission on Medicare claims. *Id.*; GX400 (an email sent from Arroyo to Vantari employees, with Defendant copied, instructing employees to continue providing Defendant with Medicare claims information).

Other exemplary misrepresentations include that Vantari and ALS entered into an activity-based compensation contract; that Defendant, through ALS, was to be paid for active contractor representations that performed sales and marketing activities for Vantari; that the compensation was determined at arm's length, was consistent with fair market value and did not depend on the account volume or value of Medicare referrals; and that Defendant, ALS employees or subcontractors would not be compensated for services reimbursed by Medicare. Docket No. 620 at 10–11; GX12. The Government presented testimony from Sean Parrish, Arroyo, J.J. Rudy, Raj Desai and Aman Rangan regarding Defendant's awareness that Vantari was paying him, through ALS and Vivo, for Medicare business, despite the contract's misrepresentations. Docket No. 620 at 11. The Government offered as corroborating evidence emails and spreadsheets concerning ALS's commissions and purported activity (GX401A–402B, 404–408, 410–414), a sham $75,000 bonus payment (GX507), arbitrary calculations of activity-based compensation unrelated to active representatives (GX514) and falsified, inconsistent activity reports (GX 410A–D, 414). *Id.* Arroyo and Parrish then testified that Codon and KNM were merely vehicles used to embezzle income and to take business from Vantari's other partners, Lamb and Shaun Opie. *Id.* Arroyo specifically testified that Defendant received higher commissions from Vantari for his paying back Arroyo and Parris a percentage of the increase directly. *Id.* Arroyo and Parrish testified that they

did not perform any services for Defendant. *Id.* Finally, Arroyo and Parrish testified Defendant received kickbacks from them, through Codon, for Vantari lab samples that were diverted to another lab after the requisition forms were altered. *Id.* at 11–12; GX325.

Moreover, this case is distinguishable from *Nora*. The issue in *Nora* was whether the defendant knew that his work was unlawful, specifically whether there was sufficient evidence at trial from which a rational juror could conclude beyond a reasonable doubt that Nora acted "willfully" to defraud Medicare or pay illegal health care kickbacks. *Nora*, 988 F.3d at 829. The government in *Nora* provided evidence about his work responsibilities, his participation in a compliance program and testimony explaining the company's schemes. *Id.* at 831–32. But there was no evidence that the defendant "understood the unlawful fraudulent purpose behind [the company]'s practices. Although there was testimony that "everyone in the office" knew about the fraudulent practice of ghosting and that practice was integral to the company's "culture," there was no evidence that imputed the practice to the specific defendant, out of 150 employees. Unlike *Nora*, the Government here presented sufficient evidence from which a rational juror could conclude that Defendant knew receiving percentage-based compensation for marketing and advertising services constituted illegal remunerations.

Finally, the jury was given jury instructions regarding "knowingly" and "willfully" in regard to the Anti-Kickback Statute. Docket No. 595. Viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found the elements of Defendant knowingly and willfully violating the Anti-Kickback Statute beyond a reasonable doubt.

### B. Sufficiency of the Evidence to Establish Defendant Entered into an Agreement to Commit a Crime

Next, Defendant argues that the Government failed to provide sufficient evidence to show that Defendant agreed to engage in unlawful conduct when pharmacogenetic testing is not

inherently unlawful. *Id.* at 21.  Defendant contends that a rational juror could not find the elements of the alleged conspiracy met absent specific evidence of Defendant's willfulness regarding soliciting or receiving or offering or paying money to induce referrals, or for furnishing or arranging for the furnishing of health care services. *Id.*

Defendant further contends that the evidence as to both the intent to further the unlawful purpose and the level of intent required to prove the underlying substantive offense was deficient "because it failed to establish that Mr. Marchetti agreed to be involved in any activity that was actually unlawful." *Id.*  In support of this proposition, Defendant cites two Fifth Circuit cases in arguing that "payments to distributors and marketers are not *per se* violations of the AKS." *Id.* (citing *United States v. Miles*, 360 F.3d 472, 480 (5th Cir. 2004); *United States v. Shoemaker*, 746 F.3d 614, 628 (5th Cir. 2014)).  Instead, Defendant argues, the evidence can only support the conclusion that Defendant and ALS's conduct—distribution and marketing of Vantari product—was permissible under the Anti-Kickback Statute. *Id.*

The Government, however, did provide sufficient evidence of Defendant entering into an agreement to engage in unlawful conduct.  The Government presented documents showing Defendant's role in Advanced Life Sciences ("ALS") and Vivo Holdings ("Vivo"); contracts between ALS and Vantari; contracts between Vivo and Vantari; Vantari commission statements showing the health care business procured by ALS and corresponding Vantari payments to ALS and Vivo; and data from Vantari Medicare claims from 2014 to 2016.  Docket No. 620 at 7–8; GX1–2, 10–15, 103A–C, 125A–Z.  The Government also presented testimony from Arroyo, Parrish and Lamb, all of whom testified that Defendant agreed to receive kickbacks in exchange for the referral of and arranging for, and ordering and recommending the ordering of, Medicare business.  Docket No. 620 at 8.  Arroyo and Parrish further testified that Defendant paid them

kickbacks, through KNM Global, in exchange for arranging for the ordering of Medicare business. *Id.* The Government also presented corroborating testimony from Special Agent Jason Rennie regarding his analysis of Defendant's financial transactions. *Id.* Special Agent Rennie sponsored documents reflecting financial transactions between the parties. *Id.*; GX50–52, 54–55, 65–66. Viewed in the light most favorable to the Government, a rational juror could infer that Defendant agreed with at least Arroyo, Parrish, Vantari and KNM Global to unlawfully enrich themselves by paying and receiving kickbacks in exchange for the referral of and arranging for, and ordering and recommending the order of Medicare business, to conceal the kickback arrangement and to use the kickbacks and proceeds from the kickback arrangement for personal benefit.

Moreover, Defendant's reliance on *Miles* and *Shoemaker* is misplaced. In *United States v. Miles*, two defendants were convicted by a jury for paying health care kickbacks. 360 F.3d 472, 479 (5th Cir. 2004). The defendants were founders of APRO, an in-home medical treatment company that obtained reimbursement for patient visits. *Id.* at 475. The government presented evidence that APRO paid a public relations firm to distribute information to doctors about the company's home health services. *Id.* at 479. If a patient needed home health care services, the doctor would reach out to the public relations firm, who in turn would provide the patient's name and Medicare number to APRO. *Id.* APRO paid the public relations firm $300 for each Medicare patient referral. *Id.* The Fifth Circuit held that because the public relations firm had no authority in selecting the particular home health care provider, APRO's payments to the firm were not illegal kickbacks under the Anti-Kickback Statute. *Id.*

Although payments to distributers and marketers are not *per se* illegal, there are "certain situations where payments to non-doctors would fall within the scope of the statute." *Id.* One example is where the salesperson is "the relevant decisionmaker and his judgment was shown to

have been improperly influenced by payments he received from the [service provider.]" *Id.* at 480–81 (citing *United States v. Polin*, 194 F.3d 863 (7th Cir. 1999)). Where there was no evidence in *Miles* of the defendant having decisionmaking power or improper influence, the Government in the present case offered evidence and testimony of Defendant's improper influence over referring providers. For instance, Arroyo testified that Defendant received higher commissions from Vantari in exchange for Defendant giving Arroyo and Parrish a percentage back. Docket No. 620 at 11. Arroyo and Parrish specifically testified that they paid Defendant "because of his and his agents' ability to leverage informal access, power, and influence over referring providers." *Id.* at 12.

As for *Shoemaker*, the Fifth Circuit panel, after analyzing *Miles*, characterized "relevant decisionmakers" as "remuneration recipients who were paid with the culpable intent to induce 'referrals.' " *United States v. Shoemaker*, 746 F.3d 614, 629 (5th Cir. 2014). Defendant focuses on the intent differentiation in *Shoemaker*: "a payer's intent to induce 'referrals[]' " is illegal but "the intent to compensate advertisers" is not. *Id.* at 628. And merely compensating an advertiser after each purchase alone "is insufficient to support the provider's conviction for making a payment 'to refer an individual to a person' " under the statute. *Id.* But here, as discussed above, the Government offered sufficient evidence and testimony for a juror to find that Defendant had influence and power over referring providers, which goes beyond mere compensation.

Finally, Defendant contends that the jury misplaced the sufficiency of the following evidence as to Defendant's knowledge and willfulness to conspire to violate the Anti-Kickback Statute: (1) Defendant's contract with Vantari to receive compensation to perform sales and marketing activity based on a percentage of collections; (2) Defendant giving Jessica Conn (a Vantari/Codon employee) a gift card; (3) Defendant submitting an activity report provided to

Vanturi with references to physicians with names similar to restaurants; (4) Defendant's contract with KNM Global to pay for consulting services from reimbursements from Vanturi tied to commercial claims for genetic testing; and (5) Defendant's contract between ALS and Codon to perform sales and marketing activity. Docket No. 612 at 21–22.

As discussed above, the Government presented sufficient evidence regarding Defendant's knowledge and willfulness to support an inference that he knowingly and willfully conspired to violate the Anti-Kickback Statute. Accordingly, "the jury is free to choose among reasonable constructions of the evidence." *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir.), *cert. denied*, 517 U.S. 1228 (1996).

\* \* \*

In considering a motion for a judgment of acquittal, the Court determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Defendant has not established that the jury's verdict was "so insupportable as to fall below th[at] threshold . . . ." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). On the record before it and viewing the evidence in the light most favorable to the Government, the Court finds that a rational trier of fact could find the essential elements of the crime charged in Count 1 beyond a reasonable doubt. Accordingly, Defendant's Motion for Judgment of Acquittal (Docket No. 612) is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Leave (Docket No. 659) is **GRANTED** and Motion for Judgment of Acquittal (Docket No. 612) is **DENIED.**

**SIGNED this 14th day of March, 2022.**

                                                ROBERT W. SCHROEDER III
                                                UNITED STATES DISTRICT JUDGE